**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000060
17-FEB-2015
07:53 AM**

NO. CAAP-12-0000060

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

KARYN EILEEN HERRMANN, Plaintiff-Appellee, v.
KENNETH ROSS HERRMANN, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 95-0-0475)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

In this appeal from a denial of post-decree relief, Defendant-Appellant Kenneth Ross Herrmann (Father) presents issues involved in his attempt to recoup overpaid child support and enforce pre-existing support termination provisions in the Family Court of the First Circuit (Family Court).[1]

I.

Father and Plaintiff-Appellee Karyn Eileen Herrmann (Mother) had two children together: Son, born on July 1, 1987, and Daughter, born on June 16, 1991. On February 11, 1998, Father and Mother were divorced by the Family Court. In the February 11, 1998 Divorce Decree (1998 Decree), Paragraph 4 awarded the parties joint legal custody and shared physical custody of the children and Paragraph 5 required Father to make child support payments to Mother in the amount of $1,600 per

---

[1] The Honorable Paul T. Murakami presided unless otherwise noted.

child per month, for a total of $3,200 per month.   Paragraph 5 further stated that

> Child support for each child shall continue until he or she attains the age of 18 years or graduates from or discontinues high school, whichever occurs last.  The issue of child support thereafter, if any, including the amount, duration, manner of payment, payor, and payee, shall be reserved for future agreement by the parties or future determination by the Court, if necessary.
>
> . . . .
>
> . . . [Father] shall make his child support payments through the Child Support Enforcement Agency ("CSEA"). . . . pursuant to Section 571-52, Hawaii Revised Statutes (Act 200, House Bill No. 3570, H.D.1, S.D.1, C.D.1, effective June 7, 1998).[2]  Payment to the CSEA shall be by income assignment (pursuant to the Order for Income Assignment which shall be filed concurrently herewith). . . . When called upon to determine that his obligation of child support for [children] has finally terminated, the CSEA and [Father's] employer may accept a written declaration, signed under penalty of perjury by [Father, Mother], and the affected adult child, to that effect and a further order of the Family Court shall not be required.
>
> The Child Support Enforcement Agency is hereby made a party for the limited issue of child support.
>
> All of the foregoing shall be subject to the further order of the [Family] Court.

The 1998 Decree separately provided that primary and secondary education expenses would be paid entirely by Father, as both children attended private schools at that time.   In Paragraph 7, the 1998 Decree stated,

---

[2]      Act 200, Section 2 provided,

> §571-52. Immediate Income Withholding.  In any case where child support is an issue, and an order for child support is established or modified, and the obligor receives income on a periodic basis, the court shall concurrently enter an order for immediate income withholding which shall operate as an assignment by the person to the child support enforcement agency for the benefit of the child of such amounts at such times as may be specified in the child support order.  Such order may also include child support arrears and/or reimbursement of debt pursuant to §346-37.1 [regarding the recovery of public assistance payments].  The provisions of section 571-52.2(d), (e), (f), (g), (1), (m) and (n) shall apply to all orders for immediate income withholding issued under this section.

1988 Haw. Sess. Laws at 349.

> 7.    Post High School, Higher Education Expenses.
> Each child's post high school, higher education expenses
> shall first be paid from the security account(s) held in
> trust for him or her.   The issue of payment of the balance
> of each child's post high school, higher education expenses
> shall be reserved for future agreement by the parties or
> future determination by the Court, if necessary.

On July 29, 2003, Father filed a pro se Motion and Affidavit for Post-Decree Relief seeking sole legal custody of Son.  On October 27, 2003, Mother made an offer of settlement pursuant to Hawai'i Family Court Rules (HFCR) Rule 68.  In essence, Mother offered physical custody of Son, with certain conditions, to Father, beginning with Son's semester break from the Mid-Pacific Institute, and asked for a recalculation of child support.  On November 7, 2003, Father accepted Mother's offer of physical custody of Son beginning in December 2003, but indicated that he wanted to "work together to draft a revision."  Son left Hawai'i to move in with Father on or about December 18, 2003.

Although the parties disagree about the reasons for the delay in finalizing the terms of this amendment to the 1998 Decree, on September 1, 2004, the Amendment to Divorce Decree, as Modified, Pursuant to Rule 68 Offer (2004 Amendment), was approved by the Family Court[3] and filed.  Under the 2004 Amendment, Paragraph 5 of the 1998 Decree was "withdrawn" and a new Paragraph 5 was "substituted," which provided, in pertinent part,

> 5.    [Father] shall pay to [Mother] as and for the
> support and maintenance of [Daughter] the sum of [$2,630]
> per month commencing on the fifth day of January, 2004. . .
> . [Mother] shall pay to [Father] as and for the support and
> maintenance of [Son] the sum of [$50] per month commencing
> on the fifth day of January 2004. [sic]

Thus, Father, as of January 2004, would no longer pay Mother child support for Son and Mother was obligated to pay Father $50 per month for Son.  As of September 2004, Father's support payments for Daughter would increase to $2,630, resulting in a net payment of $2,580 per month to Mother.

----

[3]     The Honorable Christine E. Kuriyama presided.

The 2004 Amendment did not alter the termination date for Father's child support obligation:

> Child support for each child shall continue until he or she attains the age of 18 years or graduates from or discontinues high school, whichever occurs last. The issue of child support thereafter, if any, including the amount duration, manner of payment, payor, and payee, shall be reserved for future agreement by the parties or future determination by the Court, if necessary.

On November 1, 2004, CSEA mailed a letter to Father informing him that it had made an "over disbursement" to Mother in the amount of $14,040. CSEA did not explain or itemize the amount.[4] The letter noted that "[a]ny issues concerning the recovery of the above over payments should be handled between the custodial and non-custodial parents."

Father testified that, following receipt of CSEA's November 1, 2004 letter, he repeatedly asked Mother to reimburse him without success. However, Father did not pursue the matter of reimbursement through the Family Court until the motion for post-decree relief that is the subject of this appeal.

On November 14, 2008, in anticipation of Daughter's graduation and eighteenth birthday the following year, Mother filed a Motion and Affidavit for Post-Decree Relief asking the Family Court to order Father to pay Daughter's college expenses. Mother asserted that Father would not commit to paying for Daughter's college expenses as he had done for Son. Mother noted that her own income was insufficient to provide for Daughter's college expenses. Mother further noted that "once [Daughter] is away it is going to be very difficult for me to even make ends

---

[4]     Father speculates that the amount represents $1,600-the amount of support for Son ordered in the 1998 Decree-multiplied by nine months-the period between January and September 2004--because CSEA continued to collect child support payments from Father for Son after January 2004 through September 2004. Father further speculates that the $14,040 amount is a typo, because $1,600 times 9 equals $14,400. At the August 10, 2011 hearing on Father's Motion for Post-Decree Relief, counsel represented, and Father, who was present by telephone, did not deny, that he was not asking for reimbursement in the correctly computed amount of $14,400. Moreover, although Father claimed he did not receive the $50/month support payments from Mother for Son for the months of January through September 2004, he did not request payment of this additional $450.

meet. Because [Daughter] does not want to visit her father it will be necessary for me to continue to provide a home for her during vacations."

Mother attached an Income and Expense Statement to her November 14, 2008 motion. Mother asserted that, exclusive of rent, her monthly expenses for Daughter as of November 7, 2008 amounted to $810. In her declaration, Mother averred that room and board and tuition for Evergreen State College was $4,595 and $27,672 respectively.

On April 22, 2009, the Family Court granted in part and denied in part Mother's November 14, 2008 Motion and Affidavit for Post-Decree Relief (2009 Stipulation). The Family Court ordered that:

> (1) [Father], pursuant to stipulation on the record, shall be responsible for payment of all costs and fees for [Daughter] to attend the Evergreen State College including tuition, books and student supplies, room and board and a reasonable allowance for clothing and student activities and/or additional fees provided that [Daughter] remains a full-time student in good standing and in a curriculum leading to a bachelor's degree.
>
> (2) [Father], pursuant to stipulation, shall continue to provide medical coverage for [Daughter] for as long as he is obligated to make payments pursuant to Paragraph (1).
>
> (3) All of the foregoing shall be subject to the further order of the Family Court.
>
> (4) [Mother's] request for attorneys fees and costs is denied.

On June 16, 2009, Daughter attained the age of 18 years. In September 2009, Daughter moved to Olympia, Washington and began attending Evergreen State College. Father testified that CSEA continued to deduct $2,580 in child support per month for Daughter. Father further testified that, in an attempt to resolve the matter without resorting to the courts, "he communicated with CSEA and objected to the continuation of the collection of this amount and that he informed CSEA that [Daughter], beginning in September of 2009, was not living at home anymore, was a full-time student at [Evergreen State College] in state of Washington, and that [Father] was paying for

5

all of [Daughter's] higher education expenses." Letters from CSEA dated April 6, 2009 and August 12, 2010, indicate that CSEA determined that child support for Daughter shall continue.

On April 13, 2011, Father filed a Motion and Affidavit for Post-Decree Relief (Motion)[5] asking the Family Court to (1) retroactively terminate child support from Father to Mother for Daughter to September 2009[6] because Daughter moved out of Mother's home at that time; (2) order Mother to reimburse Father $14,040 in child support overpayment for Son as determined by CSEA in their November 1, 2004 letter; and (3) order Mother to reimburse Father for child support overpayment for Daughter since September 2009.

At the August 10, 2011 hearing on Father's Motion, Father, Daughter, and Mother all testified concerning the amounts and manner in which money was paid towards Daughter's maintenance and support. Father asserted that, pursuant to the 2009 Stipulation, he paid $78,233.72 for Daughter's college expenses for her first two years and in addition, deposited $1000 per month into Daughter's mainland bank account for which there remained a balance of three to five thousand dollars. Father also asserted that Daughter had never asked him for more money nor told him that she had insufficient funds to meet her living expenses in college. He understood that Daughter did not come home to Hawai'i for every vacation from college, that she visited family in the "midwest" and some of the time she stayed in the "Pacific northwest." Father acknowledged that, "except for when she's been living with me when I've been in Hawai'i" Daughter was with Mother in Hawai'i. Throughout this period, CSEA continued to collect from him the child support ordered in the 2004 Amendment. Father also acknowledged his continued obligation to pay Daughter's college expenses and medical coverage through

---

[5]     Father retained the counsel of Charles T. Kleintop early in 2010.

[6]     The filing erroneously refers to Daughter departing for college in September 2010. This mistake was noted and corrected prior to the August 10, 2011 hearing on the motion.

6

graduation and committed to pay the airfare for Daughter to make two round trips to Hawai'i from Washington.

Daughter testified that Mother regularly deposited $500 per month into a Bank of Hawaii account for her and would also regularly send her gift cards or put money on account for her at certain stores. Mother also helped her move into the dormitory and purchased a bed and other incidentals for her and paid her airfare to return home for Christmas in 2009 and 2010, spring break in 2010 and summer of 2010. Since she moved off-campus in January 2011, Father has been depositing $1000 in her account each month. Daughter asserted that she never asked Father for more money because she balanced her spending between the funds provided by both Mother and Father.

Mother asserted that she deposited $500 per month into Daughter's Hawai'i bank account and also supported Daughter with additional gift cards and tab accounts. Mother's Income and Expense Statement asserted total monthly expenses for Daughter of $2,170 as of June 2011 which represented a monthly average. Mother testified that she provided a copy of the 2009 Stipulation stating that Father was responsible for Daughter's educational expenses, to CSEA. With regard to support for Son, Mother acknowledged that she was to pay $50 per month beginning in January 2004 through September 2004 and that she received $1,600 per month during that period.

On December 2, 2011, the Family Court issued its Decision, Re: Hearing on Order to Show Cause Filed 04/13/2011 [sic], in which the Family Court denied all three of Father's requests. In denying Father's Motion, the Family Court noted, in relevant part, the following:

> 1. . . . Per the representations of the parties, it would appear that the disputed $14,000.00 overpayment was due in no small part to the delay in the entry of the Order owing to disagreements between the parties as to the form of the Order, during which time the prior child support amount was being garnished from Father. The child support has remained consistent throughout since 2004 to present.
>
> . . . .

2.   . . . Although Mother's [November 14, 2008] Motion contemplated [Daughter] going to school on the mainland, the issue of child support ceasing was not raised by either party.

. . . .

4.   . . . The credible evidence showed that Father has indeed faithfully paid [Daughter's] college expenses pursuant to his April, 2009 agreement.  The evidence also indicated that Mother has sent sums of additional monies to both her children over the years.  Mother testified that her position that *inter alia* the basis for her continued receipt of child support although [Daughter] was in Washington State at school was that she was maintaining the home for [Daughter's] periodic returns during her school career, and that such funds were necessary. [Daughter] testified that she considered Hawaii to be her home.

. . . .

a)   The Court finds that while [Daughter] is away at school, the 2009 agreement that Father pay for her schooling is independent and separate from the child support provision that has been in effect since 2004. The Court notes that child support could have been dealt with in the 2009 litigation, it was not.  The Court further notes that it is inequitable for Father to now demand retroactive reimbursement some 24 months later, albeit the triggering event of [Daughter's] leaving for Washington being some 20 months ago.  The Court therefore declines to order the prayed for reimbursement or halt the child support previously ordered until such time that [Daughter] graduates or attains the age of 23, whichever comes first[.]

b)   . . . [W]hile Father may have an argument that he overpaid child support in 2004, and notwithstanding his testimony to the Court that he made no less than thirteen (13) requests to Mother for repayment since 2004, there have been no Court filings on this issue since 2004 until the instant matter was filed in April, 2011.  Lacking any documentary evidence to the contrary, the Court finds that Father is estopped from pursuing the claim, given the passage of time and opportunities to have previously raised the issue.

"Decision, Re: Hearing on Order to Show Cause Filed 04/13/2011" entered on December 2, 2011 (Decision).[7]

---

[7]   The record does not reflect an order to show cause filed on April 13, 2011.  On December 30, 2011, the Family Court entered its Order Denying Defendant's Motion and Affidavit for Post-Decree Relief Filed 04-13-2011 (Order) deciding Father's Motion.  On April 4, 2012, the Family Court entered its Findings of Fact and Conclusions of Law regarding Father's Motion pursuant to HFCR Rule 52(a).

Father's timely appeal followed. On appeal, Father challenges the denial of his requests for reimbursement of his 2004 overpayment of child support for Son and 2009-2011 overpayment of child support for Daughter and termination of his child support obligation for Daughter pursuant to the 1998 Decree and 2004 Amendment.

II.

A.    Overpayment of Child Support for Son.

As we have seen, Son moved in with Father in December 2003 while his parents finalized what would become the 2004 Amendment. When the 2004 Amendment was filed in September 2004, it no longer required that Father pay $1,600 per month for Son and provided that Mother would pay fifty dollars per month to Father towards Son's support, effective as of January 2004. However, the child support payments withheld from Father's paycheck were not reduced until September 2004. Consequently, on November 1, 2004, CSEA notified Father and Mother that an overpayment of support in the amount of $14,040 had been made to Mother, but that "[a]ny issues concerning the recovery of the above over payments should be handled between the custodial and non-custodial parents. The State will not be involved in this matter."

The statutory provision governing child support payments collected through salary assignments make it the "primary" responsibility of the party receiving the payments to terminate the salary assignment and specifically allows for reimbursement of overpayments. Hawaii Revised Statutes (HRS) § 571-52.2(d) (2006).[8] Father requested reimbursement from

---

[8]    The provision reads, in pertinent part,

In the event that the obligee retains private counsel or proceeds pro se, the obligee shall have primary responsibility for terminating the assignment. If the obligee fails to terminate the assignment when appropriate, the obligee shall reimburse the obligor to the extent of any overpayment. If the assignment is not terminated when appropriate, the obligor may seek reimbursement for any

(continued...)

Mother "at least 13 different occasions" without success. However, Father did not bring the matter to the Family Court's attention until his Motion in April of 2011. Mother argued against the reimbursement, taking the position that the change in child support payments for Son did not take effect until September 2004, Father's motion was not brought within a reasonable time under HFCR Rule 60(b), the statute of limitations under HRS § 657-1 had run, and that Father's claim was brought in the wrong court. The Family Court concluded that Father was "estopped" from seeking reimbursement for Son's support, "given the passage of time and opportunities to have previously raised the issue." The Family Court cited no other basis for its denial of Father's claim.

We presume that the Family Court was referring to the concept of "estoppel by laches," which is an "equitable doctrine by which some courts deny relief to a clamant who has unreasonably delayed or been negligent in asserting a claim." Black's Law Dictionary, 668 (10th ed. 2009).

> There are two components to laches, both of which must exist before the doctrine will apply. First, there must have been a delay by the plaintiff in bringing his claim[ ] and that delay must have been unreasonable under the circumstances. Delay is reasonable if the claim was brought without undue delay after plaintiff knew of the wrong or knew of facts and circumstances sufficient to impute such knowledge to him. Second, that delay must have resulted in prejudice to defendant. Common but by no means exclusive examples of such prejudice are loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths of material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties.

Adair v. Hustace, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982) (citations omitted).

"The relief granted by a court in equity is discretionary and will not be overturned on review unless the

---

[8](...continued)
  overpayment from the obligee or from the child support enforcement agency, to the extent the overpayment was disbursed to the department of human services.

(Formatting altered).

circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant." Aickin v. Ocean View Invs. Co., Inc., 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (citation, internal quotation marks, and brackets omitted).

While the delay of over six years between the time Father was given notice of the overpayment by CSEA and his Motion is considerable, Mother did not claim and the Family court did not find that Mother was prejudiced by the delay. As both elements of laches are not present, the Family Court failed to apply the applicable law and thereby abused its discretion in ruling Father was prevented from being reimbursed for his overpayment of support for Son.

### B. CHILD SUPPORT FOR DAUGHTER

#### 1. Termination of Child Support Payments.

The Family Court denied Father's request to halt child support for Daughter as of September 2009, when Daughter began attending college in Washington State. Father argues that the Family Court erred because under the terms of the 2004 Amendment, his child support obligation for Daughter automatically terminated when she reached the age of 18 years after she graduated from high school. We agree.

The last provision specifically governing child support in this case is contained in the 2004 Amendment. Paragraph 5 of the 2004 Amendment states, in pertinent part:

> Child support for each child shall continue until he or she attains the age of 18 years or graduates from or discontinues high school, whichever occurs last. The issue of child support thereafter, if any, including the amount, duration, manner of payment, payor, and payee, shall be reserved for future agreement by the parties or future determination by the Court, if necessary.
>
> . . . .

11

All of the foregoing shall be subject to the further order
of the Family Court.

(Emphasis added).

Thus, the plain language of the 2004 Amendment terminated child support for both children upon the attainment of age 18 or graduation from high school, whichever was later. In Daughter's case, both had occurred by June 2009 and by September 2009, the point at which she began attending college in Washington State and Father contended his child support payments for Daughter should have ended and, in any event, separate and apart from the child support being assigned from his salary, he was paying her college expenses at that point.

As the Family Court acknowledged in Finding of Fact 71, "[t]he agreement that [Father] would pay for [Daughter's] college expenses as embodied in the [2009 Stipulation] is separate and independent from the child support provision that has been in effect since 2004." However, the Family Court apparently believed, when denying Father's request, that the 2004 Amendment's provision for child support was still in effect when it decided Father's Motion. We find no such provision in the record.

To the extent that the Family Court relied on the 2004 Amendment's child support provision in reaching challenged Conclusion of Law 7, which states that "[c]hild support for [Daughter] shall remain in effect until such time as [Daughter] graduates from college or reaches the age of 23, whichever comes first" (emphasis added), it is erroneous. Therefore, child support payments to Mother for Daughter should have ended in June 2009 pursuant to the 2004 Amendment.

2.    Reimbursement of Child Support Overpayments.

Having concluded that the child support payments made to Mother since June 2009 were unauthorized, we turn to the issue of reimbursement for this overpayment. Father sought reimbursement for child support payments made from September 2009 going forward. Finding of Fact 55.

Complicating this reimbursement issue are a number of factors: The first is that the record does not reveal that the amount of support Daughter was entitled to while she attended college was ever calculated using the appropriate Child Support Guidelines as required by HRS § 580-47. We note that the calculation of appropriate support for "Adult Dependent Children" who are in need of support because they are full-time students, include additional considerations. See Child Support Guidelines,[9] http://www.courts.state.hi.us/docs/form/maui/2CE248.pdf.

Another factor is, in addition to the child support amount paid by Father through CSEA, it appears Father paid for items that would be considered included in child support as part of his obligation to pay for Daughter's "college expenses." The Family Court found (Finding of Fact 62), that Father has paid

---

[9]     Considerations pertaining to "Adult Dependent Children" include:

All Stipulations and orders for child support should expressly retain Court and [Office of child Support Hearings] jurisdiction to modify or extend child support.

Support for an adult child who is a full-time student according to the institution the child attends may continue until the child attains the age of 23 after considering these factors: (1) the adult child's earnings, (2) the adult child's property, (3) the adult child's needs, as well as (4) both parents' income and resources.

In appropriate circumstances, an educationally dependent adult child receiving educational support should be expected to contribute to his/her own self support through (1) part-time employment not harmful to the child's academic progress, or to other appropriate school-related pursuits, (2) grants, scholarships, and fellowships (tuition forgiveness), and (3) loans. [n.13: Nabarrete v. Nabarrete, 86 Hawai'i 368, 949 P.2d 208 (App. 1997).]

Payments may be made directly to the educationally dependent adult child by agreement of the parents or by order of the court. Normally, a parent who receives child support for an educationally dependent adult child should pay for the child's room and board.

The Court in its discretion may order the parents of a disabled to child to support their child beyond the age of majority, and beyond age 23, without regard to the child's educational status.

2010 Child Support Guidelines at 14.

Daughter's college expenses pursuant to the 2009 Stipulation, which provided in pertinent part,

> [Father], pursuant to stipulation on the record, shall be responsible for payment of all costs and fees for [Daughter] to attend the Evergreen State College including tuition, books and student supplies, <u>room and board and a reasonable allowance for clothing and student activities and/or additional fees</u> provided that [Daughter] remains a full-time student in good standing and in a curriculum leading to a bachelor's degree.

Therefore, more than the tuition, books, fees, and student supplies normally associated with college expenses, the 2009 Stipulation provided that Father would pay for room and board, a reasonable allowance for clothes, and for student activities. Father also agreed to pay for Daughter's medical coverage in the 2009 Stipulation. Thus, to the extent that Father separately paid for items that would generally be paid for through child support payments, Father paid for these expenses twice.

Still another factor is that the record reveals, and the Family Court also found, that Mother contributed towards Daughter's expenses both at college and when she resided in Hawai'i during semester breaks, and used the child support payments from Father to do so. Findings of Fact 63-70.

Therefore, whether, and to what extent Father overpaid child support for Daughter depends, in the first instance, on a determination of what amount was necessary to meet Daughter's needs while in college. Child support is defined, in relevant part, as "payment for the necessary support and maintenance of a child as required by law," HRS § 576D-1 (2006), and it is well settled that "a payment in excess of the children's reasonable needs at the appropriate standard of living is, by definition, a payment for something other than child support." <u>Richardson v. Richardson</u>, 8 Haw. App. 446, 456, 808 P.2d 1279, 1286 (1991). Conversely, "[a]n unusually high monthly income that would result in a computation higher than the reasonable needs of the children is one exceptional circumstance warranting departure." <u>Matsunaga v. Matsunaga</u>, 99 Hawai'i 157, 166, 53 P.3d 296, 305 (App. 2002) (citation and internal quotation marks omitted). Again, that

14

Daughter is an adult dependent child due to being a full time college student, also warrants special considerations, including her earnings and assets.  See Hawai'i Child Support Guidelines 2010 at 14.

Thus, before the Family Court can determine whether offsets against the overpaid child support might be appropriate, the parties should each submit a fully documented and completed Child Support Guidelines Worksheet.  Once the Family Court determines the child support amount, it can then determine the amount of overpayment and possible offsets to calculate the amount of reimbursement due to Father.

### III.

Based on the foregoing, we vacate the "Decision Re: Hearing on Order to Show Cause Filed 04/13/2011" issued on December 2, 2011 and the "Order Denying Defendant's Motion and Affidavit for Post-Decree Relief Filed 04-13-2011" entered on December 30, 2011, by the Family Court of the First Circuit and remand for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, February 17, 2015.

On the briefs:

Charles T. Kleintop
Dyan M. Medeiros
(Kleintop, Luria & Medeiros),
for Defendant-Appellant.

Presiding Judge

Francis T. O'Brien,
for Plaintiff-Appellee.

Associate Judge

Associate Judge